Eric H. Gibbs (SBN 178658)
Dylan Hughes (SBN 209113)
Steve Lopez (SBN 300540)
**GIBBS LAW GROUP LLP**
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:    (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH GRAHAM, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>HYUNDAI MOTOR AMERICA, INC.,<br><br>                    Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

**NATURE OF THE CASE**

1. Plaintiff and the class members she proposes to represent are owners or lessees of 2011-2015 Hyundai Sonatas that were manufactured with an undisclosed defect in the engine's rotating assembly. The rotating assembly cannot withstand the long-term stress generated within the Sonata's combustion chambers and fails within the useful life of the engine (most failures occur between 60,000 to 90,000 miles). When the rotating assembly fails, it does so without warning and causes the engine to seize suddenly—leaving Sonata drivers without power and struggling to maneuver the vehicle to safety.

2. Rather than addressing this safety problem by warning drivers and recalling its dangerous vehicles, Hyundai has concealed the problem from consumers and implemented a concerted practice of denying warranty coverage for failed engines. Hyundai tells Sonata owners that they must submit a complete record of the vehicle's maintenance history before making a warranty claim—even though it knows that Sonata engines fail regardless of owner maintenance and that the faulty rotating assembly is responsible. For those warranty claims that are submitted, Hyundai's practice is to deny them based on inadequate maintenance records or improper maintenance. Hyundai denies that engine failures are widespread in Sonata vehicles and blames its customers for the problem—forcing them to pay as much as $10,000 for an engine replacement.

3. Plaintiff now brings this proposed class action against Hyundai for violating California's consumer protection laws. Among other things, Plaintiff seeks an order requiring Hyundai to immediately disclose the existence of the rotating assembly defect and its associated risks to all existing and prospective customers, to repair the defect and all resulting damage in Sonata vehicles free of charge, and to cease selling Sonatas through its dealerships until the defect is repaired.

**PARTIES**

4. Plaintiff Beth Graham is a citizen and resident of Pingree Grove, located in Kane County, Illinois.

5. Defendant Hyundai Motor America ("Hyundai") is headquartered in Fountain Valley, California. Hyundai is a wholly-owned American subsidiary of Hyundai Motor Company of Korea, for which it serves as a general manager and exclusive distributor of Hyundai vehicles within the United States.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

6.  This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Hyundai, on the other, are citizens of different states.

7.  Venue is proper in this District under 28 U.S.C. § 1391(b) because Hyundai resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

8.  Assignment is proper to the San Jose division of this District under Local Rule 3-2(c)-(e), as a substantial part of the events or omissions which give rise to the claim occurred in San Jose County.

**SUBSTANTIVE ALLEGATIONS**

9.  Defendant Hyundai is the manufacturer, distributor, and warrantor of all 2011-2015 Hyundai Sonata vehicles sold within the United States—referred to hereafter as "Class Vehicles."

10.  Class Vehicles are sold with a 5-year / 60,000-mile New Vehicle Warranty and a 10-year /100,000-mile Powertrain Warranty.  The New Vehicle Warranty covers original components found to be defective in material or workmanship under normal use and maintenance.  The Powertrain Warranty covers powertrain components—including the engine block and all internal parts—found to be defective in material or workmanship under normal use and maintenance.  The Powertrain Warranty applies only to the original purchaser and to purchasers of certified pre-owned vehicles, and commences upon the expiration of the New Vehicle Warranty.

11.  Unbeknownst to Hyundai's consumers, Class Vehicles are also sold with defective rotating assemblies that cause sudden and catastrophic engine failure.  The rotating assembly is the part of the engine responsible for converting linear motion into rotational motion.  It is supposed to take the power generated within the combustion chambers and transfer it from the pistons and through the crankshaft.  The entire rotating assembly, as it is called, consists of a crankshaft, pistons, piston

assembly, connecting rods, bearings, as well as the lubrication passages needed to keep the assembly properly lubricated.

12. The rotating assembly in Class Vehicles is not properly manufactured to withstand the combustion forces over the life of the engine. It eventually succumbs to the long-term stress and stops converting the piston's linear motion to the rotational motion of the crankshaft. There are no warning signs that the rotating assembly is about to fail, but when it does, it causes the engine to abruptly seize—leaving Sonata drivers stranded and in need of a new engine block.

13. Sudden Sonata engine seizures have become widespread as a result of the rotating assembly defect. Over a hundred reports have been posted online—including on the National Highway Traffic Safety Administration (NHTSA) website and on Hyundai owner forums—and likely thousands more have experienced the same thing but not taken the time to post about their experience. The issue has become so common that when one Sonata owner suffered an engine seizure and had her car towed to the local Hyundai dealership, she found that four *other* Sonatas were already at the dealership for the same issue.

14. The cost of replacing a Sonata engine that has failed because of the defect runs between $5,000 and $10,000—depending on labor costs and whether the replacement engine is new or used.

15. But it is not only the high cost of engine failures that has Sonata owners so concerned. When the engines fail, they do so with no warning and expose drivers, passengers, and others on the road to significant risk. Sonata owners have been driving at 70 miles per hour or in the middle of rush-hour traffic when their engines suddenly froze, leaving their vehicles without power, without power steering, and without power brakes. Making matters worse, smoke can billow from the engine and obscure drivers' vision as they attempt to maneuver the vehicle to safety. On rare occasions, the abrupt loss of lubrication has even started a fire in the engine compartment. The experience of a sudden engine failure is often a harrowing affair for Sonata owners—several of whom have reported near accidents and called on Hyundai to conduct a safety recall.

16. Hyundai is, of course, currently aware that Sonata engines are seizing in record numbers. It provides Hyundai dealerships with replacement engines and carefully tracks both part sales and the

type of repairs conducted by its dealerships.  In addition, many Sonata owners have complained to their dealership and to Hyundai's corporate office—to no avail.

17. The strong likelihood is that Hyundai knew of the rotating assembly defect much earlier, likely before Class Vehicles were ever released to the public.  Discovery and review of Hyundai's internal records will be necessary to know for certain, but the rotating assembly defect is one that would typically be discovered during standard pre-release testing.  Hyundai, like all automakers, subjects its rotating assemblies to material stress tests and accelerated testing designed to ensure that the assembly will withstand typical engine forces for at least 10 years and 150,000 miles.  The severe and widespread nature of this particular defect is unlikely to escape pre-release testing.  More likely, Hyundai did not know how to fix the issue quickly and was unwilling to incur the expense and delay associated with re-manufacturing the Sonata's rotating assembly.

18. The prepared and concerted way in which Hyundai has responded as Sonata owners have suffered from seized engines, strongly supports Plaintiff's allegation that Hyundai has long known about the rotating assembly defect.  If Hyundai had learned only recently that its Sonatas are suffering from an extremely high number of engine failures, one would acknowledge the issue and repair the vehicles under warranty or pursuant to a safety recall.  Instead, Hyundai is continuing to deny that anything is wrong with the Sonata's rotating assembly, actively concealing the widespread nature of the problem, and systematically blaming its customers to minimize its warranty costs.

19. Hyundai has never disclosed the rotating assembly defect to consumers—through its dealerships or otherwise.   It has not even stopped selling Sonata vehicles with defective rotating assemblies; it continues to sell them—without including any warning—as both new vehicles and used vehicles.

20. Most engine failures occur within the 10-year /100,000-mile Powertrain Warranty that Hyundai provides with its new and certified pre-owned vehicles, but Hyundai employs a concerted practice to avoid paying for engine replacements.  Even though Hyundai knows that the rotating assembly defect—and not driver maintenance—is responsible for Sonata engine failures, it instructs its dealers to blame them failures on poor maintenance and to tell Sonata owners that they must a complete maintenance history (including all receipts) before they can make a warranty claim.  For those Sonata

owners who are not discouraged and do make a warranty claim, Hyundai's practice is to deny warranty coverage based on inadequate maintenance records or improper maintenance.  And if a customer calls to complain, Hyundai's practice is to blame the problem on improper maintenance and deny that engine failures are widespread in Sonatas and the result of a systemic defect.

21. The safety hazard posed by the Sonata's rotating assembly defect, along with the exorbitant repair costs Hyundai is shifting to its consumers by systematically denying warranty coverage, will only worsen if nothing is done soon.  The Sonata rotating assembly defect typically takes around 60,000 to 95,000 miles before it manifests itself in catastrophic engine failure—so the problem will only get worse as more Sonata owners reach this mileage.  To date, the vast majority of reported engine failures have occurred in 2011 Sonatas.  But 2012 Sonatas are following a similar pattern, with complaints of engine seizures now beginning to accrue (just as they did about a year ago with 2011 Sonatas).  And 2013-2015 Sonatas will likely follow the same pattern as well since Hyundai has yet to fix the defect and continues to use the same defective rotating assembly in those vehicles as well.

## PLAINTIFF'S EXPERIENCE

22. Last year, Plaintiff Beth Graham purchased a used 2011 Hyundai Sonata with 65,000 miles from Elgin Hyundai in Elgin, Illinois.

23. In January 2015, Ms. Graham's husband was driving the Sonata on the highway during rush hour when the engine suddenly seized and the engine turned off.  Fortunately, Mr. Graham was able to coast to the side of the highway and call a tow truck.

24. At the time the engine seized, the Grahams had owned the car for about seven months and put an additional 14,000 miles on the vehicle—for about 79,000 miles in all.  Hyundai refused to cover the full cost of the repair.  After several calls to Hyundai's regional office, Hyundai agreed to pay a portion of the cost as a "goodwill gesture."  Ms. Graham was still required to pay $2,000 for the engine repair, about $800 for a rental car while her Sonata was being repaired, and about $150 for towing and an initial diagnosis.

25. At no time before or after Ms. Graham purchased her Sonata did Hyundai or its dealership inform her of the car's rotating assembly defect or the defect's implications for the engine and her safety.  Had she been told, Ms. Graham would not have purchased the 2011 Sonata.

## CLASS ACTION ALLEGATIONS

26. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and a proposed class initially defined as:

> All persons who purchased or leased a 2011-2015 Hyundai Sonata within the United States.

27. Excluded from the proposed class is Hyundai; any affiliate, parent, or subsidiary of Hyundai; any entity in which Hyundai has a controlling interest; any officer, director, or employee of Hyundai; any successor or assign of Hyundai; and any judge to whom this case is assigned and any member of his or her immediate family.

28. <u>Numerosity</u>. Hyundai has sold hundreds of thousands of Class Vehicles, such that there are far too many class members to be practically joined in a single action. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

29. <u>Existence and predominance of common questions</u>. Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions include:

    a. Whether the rotating assembly in Class Vehicles is defective;

    b. Whether the defect causes sudden engine failure and poses a safety hazard to consumers;

    c. Whether Hyundai had a duty to disclose the defect and its consequences to its customers;

    d. Whether the defect and its consequences would be considered material by an objectively reasonable person; and

    e. Whether it is unfair under the UCL for Hyundai to sell or fail to recall dangerous vehicles.

30. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the class members or she proposes to represent purchased a Class Vehicle that contains the same defective rotating assembly, giving rise to substantially the same claims.

6
CLASS ACTION COMPLAINT

31. <u>Adequacy</u>. Plaintiff is an adequate representative of the proposed classes because her interests do not conflict with the interests of the class members she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

32. <u>Superiority</u>. The action may be certified under Rule 23(b)(3) because common questions predominate as described above and because a class action is the best available method for the fair and efficient adjudication of this controversy. This litigation involves technical issues that will require expert testimony and targeted discovery of a sophisticated defendant, and could not practically be taken on by individual litigants. In addition, individual litigation of class members' claims would be impracticable and unduly burdensome to the court system and has the potential to lead to inconsistent results. A class action presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33. In the alternative to class certification under Rule 23(b)(3), the proposed class may be certified under Rule 23(b)(2) because Hyundai has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory appropriate with respect to the class as a whole.

## CHOICE OF LAW ALLEGATIONS

34. The State of California has sufficient contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed nationwide class. Hyundai does substantial business in California, its principal offices are located in California, and it maintains over 50 authorized dealerships in California—more than any other state.

35. The conduct that forms the basis for each and every class members' claims against Hyundai emanated from Hyundai's headquarters in Fountain Valley, California. Hyundai's marketing department, warranty department, customer affairs department, and engineering and design analysis groups are all located in Fountain Valley, California, and it is those departments who were responsible for the decision to conceal the rotating assembly defect from Hyundai's customers and to systematically deny warranty coverage for resulting engine failures based on improper maintenance and inadequate maintenance records.

36. The State of California also has the greatest interest in applying its law to class members' claims. Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of fraud and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.*, 19 Cal. 4th 1036, 1064 (1999).

37. Were other states' laws applied to class members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a corporate citizen like Hyundai, who does business throughout the United States, if it can only ensure that consumers from one of the fifty states affected by conduct that runs afoul of its laws are compensated.

## FIRST CAUSE OF ACTION
### For Violation of the Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*

38. Plaintiff re-alleges, as if fully set forth, each and every allegation herein.

39. Hyundai has violated the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1770(a)(5), (7), (14), and (16), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—namely, the sale of Class Vehicles to Plaintiff and class members—that are intended to result and have resulted in the sale and lease of goods to consumers.

40. In connection with the sale of Class Vehicles to Plaintiff and class members, Hyundai omitted material information about those vehicles which it was legally obligated to disclose. Hyundai has never informed Plaintiff or class members—at the point of sale or otherwise—that the rotating assembly in Class Vehicles is defective and can cause sudden engine failure.

41. The Class Vehicle's faulty rotating assembly poses an unreasonable safety risk to consumers and other members of the public with whom they share the road. Hyundai had exclusive knowledge of the defect and has actively concealed it from consumers.

42. As a result of Hyundai's violations of the CLRA, Plaintiff and Class members have suffered damages. Plaintiff and class members would not have purchased Class Vehicles had the defect and associated risks been disclosed to them. In addition, Plaintiff and other class members have

1  incurred significant repair costs, including expensive engine replacements, diagnostic expenses, towing
2  costs, and rental car expenses as a result of the defect.  They are left with vehicles of diminished value
3  and utility because of the defect, which continues to pose a safety risk.

4   43.   Plaintiff seeks an order requiring Hyundai to immediately disclose the existence of the rotating assembly defect and associated risks to all existing and prospective customers, to repair the defect and all resulting damage in Class Vehicles free of charge, and to cease selling new or certified pre-owned Class Vehicles through its dealerships until the defect is remedied.  In addition, Plaintiff will serve Hyundai with a notice letter to provide Hyundai with the opportunity to correct its business practices pursuant to Civil Code § 1782.  If Hyundai does not thereafter correct its business practices, Plaintiff will amend this action to add claims for monetary relief, including restitution and actual damages under the CLRA.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

44.   Plaintiff re-alleges, as if fully set forth, each and every allegation herein.

45.   Hyundai has violated and continues to violate California's Unfair Competition Law (UCL), which prohibits unlawful, unfair, or fraudulent acts and practices.

46.   Hyundai's conduct, as alleged in this complaint, constitutes an unlawful practice under the UCL in that it violates the Consumers Legal Remedies Act.

47.   Hyundai's failure to disclose material facts to class members—namely, the rotating assembly defect and its implications for the vehicles' engines and class members' safety—constitutes a fraudulent business practice under the UCL, as it is likely to deceive an objectively reasonable consumer.

48.   Hyundai's sale of defective vehicles and failure to recall those vehicles are each unfair business practices under the UCL.  The practices are unethical, unscrupulous, or substantially injurious to consumers; any legitimate utility of the practices are outweighed by the harm to consumers; the injury is not one that consumer reasonably could have avoid; and/or the practice run afoul of the public safety policies underlying the Highway Safety Act, the National Traffic and Motor Vehicle Safety Act, and California's Secret Warranty Law, among others, as well as the consumer protection policies underlying

the CLRA.

49. As a result of Hyundai's violations of the UCL, Plaintiff has suffered injury in fact and lost money or property. Ms. Graham purchased a vehicle she would not otherwise have purchased, suffered a catastrophic engine failure and incurred significant expense to replace the engine, and is left with a vehicle of diminished value.

50. Plaintiff and class members seek equitable relief under the UCL, including restitution of all revenue accruing to Hyundai or its dealerships as a result of Hyundai's violations, declaratory relief, a permanent injunction prohibiting Hyundai from continuing to violate the UCL, and an award of attorney fees and costs.

**TOLLING**

51. Any applicable statute of limitations that might otherwise bar any class member's claims is tolled by Hyundai's knowing and active concealment of the Class Vehicle's defective rotating assemblies. Hyundai kept Plaintiff and the members of the class ignorant of vital information essential to the pursuit of their claims. Class members could not reasonably have discovered that their rotating assemblies were defective until their engines suddenly seized. Even then, Hyundai continued to actively conceal that the rotating assembly defect by denying the existence of a widespread problem and blaming engine failures on poor maintenance.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a. For an order certifying the proposed class and appointing Plaintiff and her counsel to represent the class;

b. For an order requiring Hyundai to immediately disclose the existence of the rotating assembly defect and associated risks to all existing and prospective customers, to repair the rotating assembly defect and all resulting damage in Class Vehicles free of charge, and to cease selling Class Vehicles through its dealerships until the rotating assembly defect is repaired;

c.  For an order awarding Plaintiff and class members actual, statutory, punitive or any other form of damages provided by statute, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

d.  For an order awarding Plaintiff and class members restitution, disgorgement or other equitable relief provided by statute or as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

e.  For an order awarding Plaintiff and the members of the classes pre-judgment and post-judgment interest;

f.  For an order awarding Plaintiff and the members of the classes reasonable attorney fees and costs of suit, including expert witness fees; and

g.  For an order awarding such other and further relief as this Court may deem just and proper.

DATED: May 7, 2015                    Respectfully submitted,

**GIBBS LAW GROUP LLP**

By:  ___/s/ Eric H. Gibbs___

Dylan Hughes
Steve Lopez
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:    (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*

11
CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: May 7, 2015

Respectfully submitted,

**GIBBS LAW GROUP LLP**

By:  /s/ Eric H. Gibbs

Dylan Hughes
Steve Lopez
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:     (510) 350-9700
Facsimile:     (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*